### In re PITTSBURG DRUG CO.

(District Court, W. D. Pennsylvania.　February 28, 1908.)

1. BANKRUPTCY (§ 350*) — DEBTS ENTITLED TO PRIORITY—CLAIM OF LANDLORD FOR RENT.

Under Bankr. Act July 1, 1898, c. 541, § 64b (5) 30 Stat. 563 (U. S. Comp. St. 1901, p. 3448), which gives priority to debts which are entitled to priority under the laws of the state, and Act Pa. June 16, 1836 (P. L. 777) § 83, which gives a landlord a lien on goods on the demised premises and liable to distress for the rent due at the time of the taking of such goods in execution, not to exceed one year's rent, upon the bankruptcy of a lessee under a lease giving the lessor the right of distress as to all goods on the premises, and also providing that on default in the payment of any rent the rent for the entire term should at once become due and payable, where at the time of the bankruptcy the lessee was in default, the landlord is entitled to priority for one year's rent from the proceeds of the property subject to distress, although he had made no levy thereon but had notified a receiver appointed by a state court for the lessee of his claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*]

2. BANKRUPTCY (§ 318*) — PROVABLE DEBTS—CLAIM OF LANDLORD FOR RENT—"FIXED LIABILITY ABSOLUTELY OWING."

Where a lease provided that on default in the payment of any rent the rent for the entire term should at once become due and payable, on the bankruptcy of the lessee while so in default the rent for the term, so far as definitely fixed by the lease, is a "fixed liability absolutely owing," within the meaning of Bankr. Act July 1, 1898, c. 541, § 63a (1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), and provable in bankruptcy against the lessee's estate; but taxes and insurance premiums which the bankrupt covenanted to pay as a part of the rent, but which at the time of the bankruptcy were not due, nor the amount then capable of ascertainment, are not so provable.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

In Bankruptcy. On certificate from referee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. A. Woods, for claimant.
W. A. Way, for trustee.

YOUNG, District Judge. This case comes before us upon the certificate of the referee in bankruptcy awarding to D. E. Nevin, landlord of the bankrupt, a priority in the sum of $11,458.40, and an unsecured claim in the sum of $13,722.71, for rent of the premises where the bankrupt carried on its business. Exceptions were filed to the report and order of the referee, by the trustee in bankruptcy, to the allowance of the priority and to the unsecured claim. The landlord also filed exceptions to the report and order, alleging that the referee erred in not allowing as a priority the further sum of $1,962.64, an amount equal to the city taxes for 1907; the sum of $201.59, an amount equal to the city water rent for the year 1907; the sum of $363.51, an amount equal to the county taxes for 1907; and the sum of $1,440, an amount equal to the fire insurance premiums due November 27, 1907.

## Statement of Facts.

The bankrupt, upon the 17th day of May, 1906, by lease in writing, rented from Daniel E. Nevin certain premises at the corner of Wood street and First avenue, in the city of Pittsburg, for the term of two years, from the 1st day of May, 1906, to the 30th day of April, 1908 for the total rent of $27,500, payable in monthly installments of $1,145.84. The lease also provided for the payment of certain sums in addition to the rent, that provision being as follows:

"In addition to the rent above specified, lessee agrees and covenants to pay said lessor as an additional rent the following sums, viz.: On or before March 30, 1907, a sum equal to amount of city taxes assessed against said premises, March and September installment for 1907: likewise on or before June 30, 1907, a sum equal to the city water rent assessed against said premises for 1907; likewise on or before July 30, 1907, a sum equal to the Allegheny county taxes assessed against said premises for 1907, provided that for the year 1907, if on or before the above respective dates lessee pays or causes to be paid the taxes, delivering the lessor the official receipts therefor, credit shall be given said lessee for said respective sums on account of this lease; also on or before March 30, 1908, lessee shall pay lessor a sum equal to one-third of all taxes assessed against said premises for 1908. city, water, and county. Lessee also covenants and agrees to pay lessor as additional rent a sum or sums sufficient to pay all premiums of fire insurance in approved companies from the date of this lease to April 30, 1908, to the amount of $60,000 required by the first mortgage, and $20,000 required by the second mortgage now on said premises; and in the event of the cancellation of any or all of the policies and the refusal or neglect of the lessee to pay said premiums, or pay the amounts, or any of them, above specified, required to pay taxes where and as specified, lessor at his option may cancel this lease, or proceed and collect any and all said same as additional rent, in the same manner as provided in this lease, by landlord's warrant, confession of judgment, or otherwise."

The lease also contains the following provision:

"And it is further agreed that in case default be made at any time in the payment of any installment of rent, or of the water tax, or of any other sum which may become due by the terms and conditions of this lease, or should the said lessee at any time remove or attempt to remove any of the goods and chattels from the premises without having paid the entire rent and water rent and other items above referred to, or should an execution be issued against

lessee, bankruptcy proceedings be begun by or against said lessee, or an assignment be made for benefit of creditors, or a receiver appointed, the entire balance of the term of the lease, including water tax or other sum, etc., then unpaid, shall thereupon become due and payable, and a landlord's warrant may be issued forthwith on this lease, and prosecuted to levy and sale for the collection of the same."

The facts as agreed upon before the referee were:

(1) That defaults were made by the lessee in the payment of rent under said lease due September 1, October 1, and November 1, 1906, and that on November 23, 1906, in the court of common pleas No. 2 of Allegheny county in Seamless Rubber Company v. Pittsburg Drug Company, at No. ——, January term, 1907, on bill in equity filed, C. F. Patterson was appointed receiver of the Pittsburg Drug Company, and thereafter on November 26, 1906, at the above number, an involuntary petition in bankruptcy was filed against the Pittsburg Drug Company; the act of bankruptcy in said involuntary petition being the above-stated appointment of a receiver by the common pleas court.

(2) That after the appointment of the receiver in the common pleas court, and prior to the filing of the bankruptcy petition, counsel for the said landlord stated to the receiver in the common pleas court that the landlord proposed to claim one year's rent as a priority claim and the rent for the balance of the term as an unsecured creditor, and thereafter, upon the filing of the bankruptcy petition and the appointment of the said Charles F. Patterson as receiver in the bankruptcy court, renewed and reiterated said statement to him as receiver in the bankruptcy court.

(3) The said receiver took possession of the personal property on the premises described in said lease and the same was thereafter sold by Justus Mulert, trustee in bankruptcy, on March 16, 1907, to J. M. Young, for the sum of $31,350; the goods so sold having been goods that were on the premises and subject to distress at the time the receiver was appointed in the common pleas court and in the bankruptcy court.

(4) The city of Pittsburg taxes March and September installments, 1907, and the water rent for 1907, and the county taxes for 1907, specified in Exhibit B attached to the landlord's claim, were ascertained and assessed in February, 1907.

(5) The landlord became liable for the fire insurance premiums on November 27, 1906 appearing upon Exhibit B attached to landlord's claim, in amount of $1,440, and actually paid the same on December 4, 1906; these insurance premiums being for insurance on the premises according to terms of the lease in advance for one year from November 27, 1906.

(6) On the 22d of April, 1907, the trustee notified the landlord that he would cease to occupy the premises after the end of April, 1907, and offered to surrender the premises. On the 25th of April, 1907, the landlord refused to accept the surrender of the premises.

(7) Prior to the 1st of May, 1907, the trustee, in pursuance of the foregoing notice to the landlord, vacated and abandoned the premises, and since May 1, 1907 has occupied them in no way whatever, and the

landlord has refused to accept said surrender of the premises or to retake possession of the same in any way.

(8) It is further agreed upon as a fact, if deemed material by the court, that the premises are now occupied by J. M. Young, above named, without permission, or without any contract of lease, contract, or agreement of any nature whatsoever with the said landlord; but the said J. M. Young stands ready and willing to pay $200 a month rental to whichever party will receive the same, but both of said parties have refused to consider any negotiations or offers whatsoever from the said J. M. Young.

The landlord, alleging a default, filed a proof of claim for the sum of $25,181.11, claiming priority for the sum of $15,426.14, and the balance $9,754.97 as an unsecured claim.

Out of the above facts arises the question: Is the landlord entitled to a priority for a part of his claim and an unsecured claim for the balance? This question naturally falls into two inquiries: First, is the landlord entitled to priority, no warrant of distress having been issued? and, second, to what amount is the landlord entitled to priority? The landlord's claim to priority, if allowed, must be based upon the provisions of the bankrupt act of 1898 (Act July 1, 1898, c. 541, § 64b [5], 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]) which provides that the debts to have priority shall be, among others:

"Debts owing to any person who by the laws of the state or the United States is entitled to priority."

The question then arises: Is the landlord's claim for rent such a debt as under the laws of the state of Pennsylvania would be entitled to priority? Act June 16, 1836 (P. L. 777) § 83, of the commonwealth of Pennsylvania, provides:

"The goods or chattels being in or upon any messuage, lands or tenements which are or shall be demised for life or years or otherwise, taken by virtue of an execution and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent at the time of taking such goods in execution: Provided that such rent shall not exceed one year's rent:"

While the statute allows the landlord one year's rent where the goods liable to distress are taken in execution, it was decided in Longstreth v. Pennock, 87 U. S. 575, 22 L. Ed. 451, that where the goods are taken by an assignee in bankruptcy the claim of the landlord to a year's rent is within the equity of the statute which gives a preference in case of execution. It would appear, then, that the bankrupt act having given a priority to any person who under the laws of the state would be entitled to a priority, and the statute of Pennsylvania having entitled the landlord to one year's rent out of the proceeds of the sale of goods on the premises liable to distress, the landlord is such person as is provided by the section of the bankrupt act referred to, and the debt such an one as is entitled to priority.

It was argued that the case of York Manufacturing Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, 15 Am. Bankr. Rep. 633, which decided that the trustee in bankruptcy was vested with no better right or title to the bankrupt's property than belonged to the

bankrupt, following Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 574, 13 Am. Bankr. Rep. 437, where the court said:

"Under the present bankrupt act the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act"

—qualified the doctrine of Longstreth v. Pennock, supra. We are of opinion that those decisions do not qualify the doctrine of that case, but rather emphasize the right of the landlord to claim his rent; all the goods on the premises being under the terms of the lease subject to distress for the entire rent of the term. So that the trustee, standing in the shoes of the bankrupt, took the goods subject to the landlord's right of distress; that right being limited by the act of 1836 to an amount not exceeding one year's rent, and it having been admitted in this case that the goods taken by the trustee were on the premises, liable to distress, and were sold for more than sufficient to pay the rent for the entire term. It has been uniformly held in Pennsylvania, not only under the act of 1836, but under the original act of 1772 (1 Smith's Laws, p. 371), and down through all the cases to the present time, that in case of execution the landlord was entitled to one year's rent due at the time of the seizure of the goods.

It was argued in this case that the claim of priority could not be allowed, because there was no distress prior to the bankruptcy petition. We do not regard this as tenable. The landlord had the right of distress. The goods were subject to distress. The statute itself provides that the landlord shall have this right if the goods are liable to distress. In Moss' Appeal, 35 Pa. 162, Mr. Justice Woodward said:

"Undoubtedly the landlord cannot claim the proceeds of goods that he could not have distrained; but what right have we to say, in the face of the statute, that he may not claim the proceeds of goods that were liable to his distress? No reasoning that we have met in reported cases would seem to justify so narrow a construction of a remedial statute."

This is recognized in Re Gerson (D. C.) 2 Am. Bankr. Rep. 170. We must conclude, therefore, that if the goods were on the premises and liable to distress the landlord would be entitled to his claim, though the goods had not been taken by warrant of distress.

We now come to the second inquiry, and that is, to what amount is the landlord entitled to priority? While the statute gives the landlord one year's rent, he is only entitled to this rent if it was due at the time of the seizure of the goods under the execution. We must therefore determine what amount of rent was due at the time of the filing of the bankruptcy petition, November 26, 1906. It appears from the landlord's proof of claim that at that time there was past due rent for the month of September to the amount of $291.68, rent for the month of October, $1,145.84, and rent for the month of November, payable in advance, $1,145.84. But there is claimed by the landlord, and awarded by the referee, rent from September 1, 1906, to September 1, 1907. This claim of the landlord is based upon the covenant in the lease that if default be made in the payment of rent, or if, among

other things, a receiver be appointed, the rent for the entire term should become due and payable; and it is claimed that Platt v. Johnson, 168 Pa. 47, 31 Atl. 935, 47 Am. St. Rep. 877, is authority for the claim. It is there said:

"As was said in Goodwin v. Sharkey, 80 Pa. 149, 'the whole rent for the term might have been made payable at any time during the running of the lease, upon the happening of any contingency. The right of distress would immediately arise,' upon the happening of the specified contingency; and that right might be exercised by the lessor to the extent of collecting more than one year's past due rent, provided the rights of execution creditors have not previously attached. If they have, the act of June 13, 1836, limiting the lessor's right to payment out of such fund to amount not exceeding one year's rent, becomes operative in favor of the execution creditors."

This is the law of Pennsylvania; but it at once gives rise to the inquiry whether parties, by contract or by covenant in their lease, can avoid the provision of the bankrupt law which requires "a fixed liability as evidenced by a judgment or an instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not," as provided by section 63a (1) of the bankrupt act. It appears to have been decided in many cases by different judges of the District Courts that rent which would fall due after the filing of the petition in bankruptcy will not be provable, although the covenant of the lease provides that it shall become due. In our own circuit, in the case of Wilson v. Pennsylvania Trust Co., 8 Am. Bankr. Rep. 169, 114 Fed. 742, 52 C. C. A. 374, it was said by Judge Acheson:

"Notwithstanding the ruling in Platt v. Johnson, 168 Pa. 47, 31 Atl. 935, 47 Am. St. Rep. 877, upholding as valid a provision in a lease that the entire rent for the balance of the term should become due if the lessee should become embarrassed, or make an assignment for the benefit of creditors, or be sold out by sheriff's sale, it may well be doubted whether the stipulation here making the whole rent for the whole term due and payable if the lessee shall become a bankrupt is enforceable as against the provisions of the bankrupt act."

The question, however, was not decided, as the case went off on another question. So far as we have been able to find, the question has not been decided by an appellate court. It is an important question, and one of special importance in this case, because of the large amount involved. Notwithstanding the eminent authority cited by counsel for the trustee, and especially the case of Wilson v. Pennsylvania Trust Co., supra, we are of opinion that the covenant in the lease making the rent for the entire term fall due is good, and the debt thereby created one provable in bankruptcy. In the cases cited, and especially in Wilson v. Pennsylvania Trust Co., supra, the default provided for was the event of the tenant becoming a bankrupt. In the case at bar the default relied upon is provided by the following clause of the lease:

"And it is further agreed that in case default be made at any time in the payment of any installment of rent, or of the water tax, or of any other sum which may become due by the terms and conditions of this lease, or should the lessee at any time remove or attempt to remove any of the goods and chattels from the premises without having paid the entire rent and water rent and other items above referred to, or should an execution be issued against lessee, bankruptcy proceedings be begun by or against said lessee, or an assignment be made for benefit of creditors, or a receiver appointed, the

entire balance of the term of the lease, including water tax or other sum, etc., then unpaid, shall thereupon become due and payable, and a landlord's warrant may be issued forthwith on this lease, and prosecuted to levy and sale for the collection of the same."

It is admitted that part of September rent and all of October and November rent for 1906 was past due, and that a receiver had been appointed by the state court on November 23, 1906, and that that receiver had been notified that the landlord would claim a year's rent as priority and the balance as an unsecured claim, and all before the filing of the bankruptcy petition. So that it appears by the express terms of the contract the entire rent for the term had become due, had become "a fixed liability absolutely owing at the time of the filing of the petition," and a landlord's warrant could have been issued for the collection of the entire amount. It also appears to us to be just as much a fixed liability, evidenced by an instrument in writing, absolutely owing at the time of the filing of the petition, as a bond securing the payment of an annuity (Cobb v. Overman, 6 Am. Bankr. Rep. 324, 109 Fed. 65, 48 C. C. A. 223, 54 L. R. A. 369), or a bond of an administrator (Hibbard v. Bailey, 12 Am. Bankr. Rep. 104, 129 Fed. 575, 64 C. C. A. 143), which by its provisions would fall due upon a default being made. In its favor we have the weight of authority of the case of Platt v. Johnson, supra. We are therefore of opinion that, not only is the debt one provable in bankruptcy, but that the whole amount became due under the express covenants of the lease and limited by the act of 1836, allowing a priority to the landlord to an amount not exceeding one year's rent, the remainder to be proved as an unsecured debt.

A question also arises as to the taxes, which under the terms of the lease are made payable at certain times after the filing of the bankruptcy petition, namely, March 30, June 30, and July 30, 1907, and the premiums of insurance, payable November 27, 1906, also after the filing of the bankruptcy petition. There is an express covenant in the lease that these taxes should be paid as additional rent on or before the dates specified. These taxes and the water rent were therefor made additional rent by the lease, and under the express covenants of the lease would be added to the monthly rents for the months of March, June, and July, 1907, and would become due upon the default in the payment of any of the installments of rent, or upon the appointment of a receiver or other contingency provided by the lease, and could have been collected when those dates arrived as rent for those months, and, if a bankruptcy petition had not been filed until after those several dates arrived, they would have become due and collectible under the express terms of the lease in case of default; but the bankruptcy petition was filed on November 26, 1906, and before the amount of taxes could be determined, because those taxes could not be determined until the municipal authorities, city and county, had fixed the rate and made the tax levy. They were not liquidated, and could not be liquidated until after the proper municipal action had been taken. How can it, then, be said that they became due by the default? What amount became due? Certainly not the amount now

claimed, for that amount was not fixed and determined until after the filing of the petition, namely, by the tax levy in February, 1907. The taxes, therefore were not a fixed liability at the time of the filing of the petition, and would not be provable in bankruptcy as between the landlord and his tenant, and necessarily could not be allowed as a priority. The same is true as to the insurance premiums, which it is admitted the landlord did not become liable for until November 27, 1906, the day after the petition in bankruptcy was filed. The premiums of insurance, therefore, cannot be allowed as a priority.

The taxes and premiums of insurance not being a fixed liability within the meaning of section 63a (1) of the bankrupt act are not provable as unsecured claims, as we have above concluded. Nor are they such unliquidated claims against the bankrupt as can be proved under section 63b, our understanding of that section being that it admits to proof only those claims which can be liquidated by legal proceedings instituted at the time of the bankruptcy; and this claim, as we have seen, could only be liquidated by the proper municipal action fixing the rate of taxation and the amount of the tax levy.

We find, therefore, that the landlord is entitled to priority for one year's rent, less the payments that have been made to him, as found by the referee, and to prove the remainder of the rent for the term as an unsecured claim; that he is not entitled to the taxes and insurance premiums as claimed by him and is not entitled to prove them as an unsecured claim. As thus modified, the report of the referee is affirmed, and all exceptions either sustained or rejected in accordance with this opinion.