KILPATRICK v. UNITED STATES FIDELITY & GUARANTY CO. et al.

(Circuit Court of Appeals, Fifth Circuit. January 4, 1916.)

No. 2818.

1. BANKRUPTCY ☞316—PROVABLE CLAIMS—CLAIMS OF SURETIES.

Bankr. Act July 1, 1898, c. 541, § 16, 30 Stat. 550 (Comp. St. 1913, § 9600), provides that the liability of a person who is a codebtor with, or guarantor or in any manner a surety for, a bankrupt, shall not be altered by the discharge of such bankrupt. Section 57i provides that whenever a creditor, whose claim is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's

name, and if he discharge such undertaking, in whole or in part, he shall be subrogated to that extent to the rights of the creditor. When a petition in bankruptcy was filed, an action was pending against the bankrupt, in which a surety bond had been given to dissolve garnishments, and judgment was subsequently recovered thereon against the bankrupt and the surety on such bond, and was paid by the surety. *Held,* that the surety had an allowable claim, as the liability of the bankrupt to it took effect from the date the surety executed the bond, and the rendition of the judgment against it and the bankrupt did not alter the relation between them established prior to the institution of the suit, nor affect the inchoate rights of the surety.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1778–1783, 2299; Dec. Dig. ⊙⇒316.]

2. BANKRUPTCY ⊙⇒312—CLAIMS—RELEASE—EFFECT ON RIGHTS OF SURETY.

When a petition in bankruptcy was filed, an action by K. against the bankrupt was pending, in which a surety bond had been given to dissolve garnishments. K. filed his proof of claim, but subsequently was permitted to withdraw such claim. On the day of filing his claim he petitioned for leave to proceed with the pending action, and was allowed to do so, and recovered a judgment which was paid by the surety. The bankrupt filed an offer of composition, which was accepted by creditors; K. filing a release of his claim and waiver of all right to participate in dividends in consideration of the trustee's release of any rights he might have as to the judgment recovered by K. The surety subsequent to the composition filed its claim for the amount paid by it, claiming to be subrogated to the rights of K. *Held* that, while K.'s release estopped him from participating in the distribution of assets, it did not defeat the surety's right to prove its claim, as the rights of the surety attached at the time of the execution of its obligation, which existed at the time of the adjudication, and it was a creditor of the bankrupt with a provable debt, which K. was powerless to waive without consideration passing to the surety and without its consent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. ⊙⇒312.]

3. BANKRUPTCY ⊙⇒312—PROVABLE CLAIMS—CLAIMS OF SURETIES.

While K. did file his claim, the withdrawal thereof and the waiver of participation in dividends was such a refusal or failure to prove his claim as authorized the surety to prove such claim under Bankr. Act, § 57i.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. ⊙⇒312.]

4. BANKRUPTCY ⊙⇒340—PROOF OF CLAIMS—FORM.

General Order in Bankruptcy No. 21, § 3 (89 Fed. ix, 32 C. C. A. ix), provides that claims which have been assigned before proof shall be supported by a deposition of the owner at the time of the commencement of proceedings, setting forth the true consideration of the debt and that it is entirely unsecured, or, if secured, the security, as is required in proving secured claims; that upon the filing of satisfactory proof of the assignment of a claim, proved and entered on the docket, the referee shall give notice to the original claimant, and, if no objection be entered, make an order subrogating the assignee to the original claimant; and that, if objection be made, he shall proceed to hear and determine the matter. The surety on a bond executed by the bankrupt, against whom judgment was recovered subsequent to bankruptcy, filed its proof of claim in the form of a petition for the establishment of its subrogated rights, elaborately setting forth a history of the entire transaction. *Held,* that this substantially met the requirements of the statute.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. ⊙⇒340.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern District of Alabama; ·Wm. I. Grubb, Judge.

In the matter of S. E. Wilbourne, bankrupt. From a decree confirming an order of the referee and allowing the claim of the United States Fidelity & Guaranty Company, J. M. Kilpatrick, trustee, appeals. Affirmed.

The report of Referee Alex C. Birch, mentioned in the opinion, was as follows:

In January, 1913, E. C. Kinney filed a suit in the circuit court of Cullman county, Ala., against S. E. Wilbourne, which suit was based on a promissory note in the sum of approximately $8,000, executed by Wilbourne in favor of Kinney. Prior to the institution of the suit Wilbourne had been engaged in the general merchandise business, with stores at Cullman and Marion, and his storehouse at Cullman, containing a stock of goods of the approximate value of $30.000, had been destroyed by fire. At the instance of Kinney, several garnishments were issued against various insurance companies and banks at Cullman in aid of his pending suit. Availing himself of the provisions of section 4313 of the Code of Alabama, Wilbourne, the defendant, executed, on February 22, 1913, a bond in a sum exceeding $17,000, with the United States Fidelity & Guaranty Company, as a surety thereon, and procured the dissolution of these several garnishments. The condition of the bond, which tracked the statute, was as follows: "If the said defendant should pay the plaintiff such judgment as may be rendered as ascertained to exist in favor of the plaintiff and against the defendant in the case, and costs of suit, then this obligation to be null and void; otherwise, to remain in full force and effect."

On October 1, 1913, more than four months after the execution of the dissolution bond, Wilbourne filed his voluntary petition in bankruptcy, in the District Court of the United States for the Northern District of Alabama, and such proceedings were had thereon that he was duly adjudged a bankrupt by this court, on said date. On October 7, 1913, E. C. Kinney filed his proof of claim, which was allowed in the sum of $8,358.46. On October 18th Kinney filed his petition asking permission to withdraw such claim, and on the same day an order was entered allowing the withdrawal of the claim from the files.

On October 7, 1913, being the same day on which Kinney filed his claim for allowance, at which time the garnishment suit of Kinney against Wilbourne was pending in the state court undetermined, Kinney filed his petition with the referee seeking permission to proceed in the state court against the bankrupt, for the purpose of holding the surety on the garnishment bond, and to obtain a judgment against the surety under the terms of the bond and against the bankrupt, with a stay of execution as to the bankrupt. This petition sought to fasten liability on the surety, and at the same time secure to the bankrupt any rights which grew out of his adjudication. A decree was entered on this petition, allowing Kinney to prosecute his suit in the state court to a judgment, with stay of execution against the bankrupt; and on October 30, 1913, judgment was rendered in the state court in favor of the plaintiff against Wilbourne, the bankrupt, in the sum of $9,117.27, with costs amounting to $1,295.30, with stay of execution, and likewise, in accordance with the provision of the Code and the condition of the bond, a judgment in like amount was rendered against the United States Fidelity & Guaranty Company.

On December 8, 1913, the bankrupt filed an offer of composition, under the terms of which he was to deposit the sum of $11,000 in court, and the creditors to receive such dividends as could be declared after the payment of the costs of administration. An order was entered calling a meeting of the creditors on December 18, 1913, to consider such offer, and at such meeting a waiver of Elizabeth Wilbourne, the wife of the bankrupt, Lola M. Pollard, his sister-in-law, whose alleged claims approximated $12,000, and waiver of E. C. Kinney in participation of any dividends had been filed. Such offer of composition was considered by the creditors' meeting and accepted, and on

December 19th the composition was confirmed by the District Court. The agreement between Kinney and Kilpatrick, the trustee, under which Kinney waived rights to participate in the distribution of the funds under the composition agreement, was as follows:

"In consideration of the undersigned, J. M. Kilpatrick, as trustee in bankruptcy of the estate of S. E. Wilbourne, releasing and assigning to the undersigned, E. C. Kinney, all of his rights, equities, and claims in and to a certain judgment rendered in the circuit court of Cullman county, Ala., against the bankrupt and the United States Fidelity & Guaranty Company, of Baltimore, Md., on the 30th day of October, 1913, together with any right of appeal in the trustee in bankruptcy to appeal from said judgment to the Supreme Court of Alabama, the undersigned hereby expressly agree to accept the liability of said United States Fidelity & Guaranty Company, of Baltimore, Md., and to look to the said Fidelity & Guaranty Company, of Baltimore, Md., for the full satisfaction of his said claim under his said judgment, and hereby releases the said trustee in bankruptcy from any liability to the undersigned as a creditor of said bankrupt estate, and takes such judgment and the rights growing out of said judgment in satisfaction of the preferred or lien claim heretofore filed against said estate, releasing all rights which he has or may have to participate against the estate of said bankrupt or the funds thereof: Provided, however, that the said E. C. Kinney shall not release or waive any of his rights to proceed against the aforesaid bond company under said judgment; and provided, further, that nothing herein contained shall be construed as being in conflict with the orders heretofore made by this court with reference to said judgment. The sole consideration for this agreement passing to the said E. C. Kinney being a release by the trustee to said E. C. Kinney of any right the trustee may have in and to said judgment or his right of appeal therefrom; and the consideration passing to the trustee being a release of the trustee of the said Kinney's right to participate in the distribution of the funds of said estate, the said Kinney looking to said judgment for the satisfaction of his said claim. Dated this the 18th day of December, 1913.

"[Signed]    E. C. Kinney,

"By Brown & Griffith, Attys.

"J. M. Kilpatrick, Trustee."

After the confirmation of the composition, and before distribution to the creditors, the attorney for the United States Fidelity & Guaranty Company notified the referee that his client claimed to be subrogated to the rights of Kinney, payee of the bond on which it was surety, and that it proposed to file a claim against the funds when it discharged the judgment rendered against it in the state court. Thereupon the referee delayed the distribution of the fund until the rights of the bond company could be determined. The bond company on April 9, 1914, at which time there was accumulated interest on the judgment of $334.30, paid and satisfied the judgment rendered against it in the state court as surety on the bond of Wilbourne, the bankrupt. Thereupon Kinney acknowledged receipt from the bond company, as a surety, of the payment of the judgment, costs, and interest, and executed an assignment to the bond company of any interest that he had in the judgment, and agreed to file any claim he might have growing out of such judgment against the bankruptcy estate of S. E. Wilbourne.

On April 20, 1914, E. C. Kinney filed his claim in the sum of $8,641, and on the same day United States Fidelity & Guaranty Company filed its proof in the sum of $10,746.87, claiming to be subrogated to the rights of Kinney. On April 28, 1914, the trustee filed objections to the allowance of both the Kinney claim and the United States Fidelity & Guaranty Company claim; the gist of such objections being that neither claimant had provable claims in bankruptcy, and that Kinney had waived his rights to participate in the distribution of the funds of the estate, and that the United States Fidelity & Guaranty Company, as surety claiming to be subrogated to his right, was bound by such waiver.

On June 29, 1914, a decree was entered by the referee allowing the claim of the United States Fidelity & Guaranty Company in the sum of $9,409.46, this being the amount of the indebtedness with interest and costs incurred, at the

time of the adjudication in bankruptcy, plus an attorney's fee of $250, which the referee fixed as earned before the time of the adjudication; that part of the claim of the United States Fidelity & Guaranty Company which was disallowed was made up of court costs and interest which accrued after the filing of the petition in bankruptcy, and that part of the $1,000 attorney fee allowed on the note by the state court, which was earned in the trial of the cause, which was bitterly contested.

On the hearing of the contest instituted by the trustee on the allowance of the claim of the bond company, the cause was submitted on the verified claim and the exceptions of the trustee thereto, the transcript of the record of the Cullman circuit court, and by agreement, on all papers or pleadings heretofore filed in the bankruptcy proceedings of S. E. Wilbourne, which might be considered pertinent to the issue. The facts of the case on this review are undisputed and have been detailed in this statement, and it is therefore unnecessary for the referee to make any specific finding of facts, as only a question of law is involved.

### Discussion of Legal Principle Involved.

On the hearing of the case before the referee it was contended by counsel for the bonding company that the execution of the agreement between Kinney and the trustee did not operate as a discharge of the surety, and counsel for the trustee, one of whom had represented Kinney in the procurement of the judgment against the surety after bankruptcy, concurred in this contention. It can therefore be taken as a premise that the agreement between Kinney and the trustee did not relieve the surety, and that such surety after bankruptcy and after the execution of such agreement discharge the debt of his principal. It appears to the referee that the sole question of law to be determined is whether or not a creditor, whose claim is secured by the undertaking of another, can waive the rights of his surety in a bankruptcy proceeding.

[1] Pretermitting for the present the power of Kinney to waive any rights of the bonding company existing at the time of the adjudication, ample authority is found in the provisions of the bankruptcy statute for the allowance of claims of sureties on the subrogation theory. Section 16 of the bankruptcy statute is to this effect: "The liability of a person who is a codebtor with or guarantor, or in any manner a surety for a bankrupt, shall not be altered by the discharge of such bankrupt." It can be read from this provision of the act as an inevitable deduction that, if the codebtor or surety of the bankrupt should fail to prove his claim, then in the event of the discharge of the bankrupt all rights of the surety against the bankrupt would be cut off. It follows, therefore, that in order to protect any rights it might have against Wilbourne, the debt having been discharged subsequent to the confirmation of the composition offered by Wilbourne, it was incumbent on the bonding company to offer its claim against the estate. It is by no means clear that the bonding company has any valid claim against the bankrupt; yet any claim it might have must be protected by an offer on the part of the bonding company to participate in the estate.

In ordinary instances, no question of waiver of rights intervening, subsection "i" of section 57 is conclusive of the authority of a surety to prove the claim of the creditor whose debt he paid; said subsection reading as follows: "Whenever a creditor, whose claim against the bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor." It would seem that section 57, construed in connection with section 63, which latter section defines the character of claims which may be proven, and the instant claim falling within the purview of the latter section, that there can be small question as to the provability of the claim of the bonding company, if the question of the waiver of participation be put behind us.

It is a fundamental principle of the law of suretyship, recognized alike under the decision of the Alabama courts and the federal courts, that the indebtedness of a bankrupt principal to his surety, who subsequently discharges

the obligation in whole or in part, takes effect from the date the surety executed the instrument which binds him, and that in the event the surety discharges the debt of the principal, after the principal's adjudication as a bankrupt, the surety is indemnified, in that he has a provable and likewise a dischargeable debt, which had its origin prior to the adjudication. In re Stout, 6 Am. Bankr. Rep. 508 (D. C.) 109 Fed. 794; Livingston v. Heineman, 10 Am. Bankr. Rep. 39, 120 Fed. 786, 57 C. C. A. 154·; 1 Remington on Bankruptcy, §§ 611 and 644; 1 Loveland on Bankruptcy, §§ 304, 329, and 330; Kyle v. Bostick, 10 Ala. 589; In re O'Donnell, 12 Am. Bankr. Rep. 641 (D. C.) 131 Fed. 150.

The rendition of a judgment against a principal and surety does not alter the relation which was established prior to the institution of the suit, and the rights of the principal and the surety in the event the judgment is rendered, either separately or jointly, are not affected. Therefore the relation of principal and surety, brought into being by the execution of the dissolution bond by the bankrupt and the bond company, was not affected by the rendition of the judgment procured subsequent to the adjudication. If the surety company had inchoate rights immediately after it signed the bond, such rights were not affected by the ripening of the claim against it in favor of Kinney to a judgment in his favor. Carpenter v. Devon, 6 Ala. 718; Knighton v. Curry, 62 Ala. 410; Habil v. U. S. F. & G. Co., 142 Ala. 363, 39 South. 54; 1 Brant on Suretyship, 409; 22 Cyc. p. 88.

[2] The case at bar, as has been stated, in the judgment of the referee, rests upon the question of the power of Kinney to waive any rights which may have existed in favor of the bond company at the time of the execution of the waiver by him. It is true that Kinney estopped himself from claiming participation in the distribution of assets, and that any claim offered by him necessarily would have been stricken. However, it does not follow that the legal effect of his waiver was to in any wise jeopardize the rights of the surety; the burning question is, When did the rights of the surety attach? If such rights came into being at the time of the execution of the bond, and existed at the time of the adjudication in bankruptcy, it does not seem that Kinney could take any arbitrary action, the effect of which would militate against such rights. If the rights of the surety did not come into being until the bankruptcy, the rendition of the judgment being subsequent to the adjudication, then it would only be subrogated to the rights of Kinney at the time of the discharge of the debt. In that case, Kinney having waived his right to any dividends, the surety, being subrogated only to the powers and privileges of his principal, would be cut off.

It is the opinion of the referee that the bond company, with inchoate rights, was a creditor at the time of the adjudication of the bankrupt. The bonding company at that time had the right to insist on the liquidation of any claim which Kinney had against the bankruptcy estate, and to discharge its liability on its undertaking, which secured the unliquidated claim, and thereupon unquestionably under the decisions it would be subrogated to the rights of Kinney to prove the debt against the estate. Manifestly it would be unfair and harsh to allow a creditor with a claim secured by an indorsement or a bond to prove his claim against a bankrupt estate, feeling assured that he could collect his debt in full by proceeding against a surety, and then waive participation in the distribution of the estate and cut off the rights of the surety to in a measure recoup his loss by receiving a dividend as partial payment on an outlay made to pay the undetermined debt of the third party.

If the obligee could arbitrarily cut off the rights of his surety by waiving his own rights, the doctrine of subrogation would be undermined, and the surety would be entirely helpless and powerless in the hands of the person whose debt he secured. The theory of subrogation is to enable one who has discharged the obligation of another to recoup loss by an inheritance of any rights, which the obligee who has been paid might have held against the debtor. Any ruling which would allow the obligee to violate the rights of his surety by waiving for the surety a potential right to participate pro rata in the distribution of a bankruptcy estate would fly in the face of this doctrine.

The case of Swarts v. Siegel, 8 Am. Bankr. Rep. 694, 117 Fed. 13, 54 C. C. A. 399, is on all fours with the case at bar. A very elaborate opinion was rendered by Judge Sanborn of the Circuit Court of Appeals, and the especial attention of the District Judge is called to this case. It is expressly held that a surety is a creditor with a provable debt at the time of the adjudication of the bankrupt. It may be that the debt was not discharged or liquidated until after an adjudication, yet, if the surety was bound for the payment of the claim at the time of the adjudication, in that event he became a creditor with all of the rights guaranteed to a creditor under the bankruptcy statute. If the bonding company was a creditor at the time of Wilbourne's adjudication, then Kinney perforce was powerless to waive, without consideration passing to the bonding company and without its consent, any rights it might have had at that time.

The attention of the District Judge is likewise called to the case of Moody v. Huntley (D. C.) 149 Fed. 797, in which case it is held that the equity of subrogation has received a liberal and broad construction by all courts of the land.

In the argument of the case before the referee, counsel for the trustee contended that any rights of the bonding company must grow out of either section 57i of bankruptcy act or from section 5385 of the Code of Alabama, and that under neither of these provisions could the bonding company be subrogated to greater rights than those rights possessed by Kinney; in other words, that the stream could not rise higher than its source. While it is true that a surety who endeavors to avail himself of the equity of subrogation takes the claim of the person whose debt he has paid, subject to all defenses, limitations, and infirmities, yet counsel for the trustee in this cause mistakes the time when the rights of the surety attached. Counsel contend that the bond company had no rights until it paid the judgment, and that at the time the judgment was discharged Kinney had no rights in the bankruptcy case, because he had expressly waived such rights. The referee, however, is of the opinion that the rights of the surety attached at the time of the execution of its obligation, which existed at the time of the adjudication, at which time they were fixed and preserved.

[3] Counsel for the trustee made the ingenious point that the claim of the bond company did not come within the influence of section 57i, in that Kinney did not fail to prove his claim. Counsel quoted from 1 Loveland on Bankruptcy at page 677: "A person who is secondarily liable for a debt of a bankrupt, as indorser or surety, may prove provided the principal creditor fails to prove his debt."

Counsel maintained that, inasmuch as Kinney proved his debt against the bankruptcy estate within five or six days of the adjudication and subsequently withdrew the proof, it could not be said that he failed to prove his claim. While in a sense it cannot be said that Kinney failed to prove his claim, yet in a legal sense, and in so far as the rights of the surety are concerned, he must be construed to have failed to prove his claim if he neglected or refused so to do on demand. It would indeed be a harsh rule which would allow an obligee to prove a claim and then immediately withdraw such proof, and thereby cut off the rights of his surety. Clearly it was the purpose of section 57i to give to the surety a right to indemnify himself in so far as possible, by allowing him to participate in the stead of the person to whom he paid the debt in the distribution of bankruptcy estates. It cannot be read into the provisions of this statute that the power lies in the obligee to collect his debt in full and then arbitrarily inhibit the surety from securing a dividend by filing his claim, and then withdrawing the same. The beneficent and equitable purpose of the section cannot be subserved if such a narrow and restricted construction is placed upon its provisions. It was the manifest intent of the lawmakers in Congress to secure to sureties, who have discharged the obligation of their principal, the benefits of the equitable doctrine of subrogation; and if such intention can be carried out by placing a liberal construction on the section under discussion, whereas a strict construction would defeat not only the ends sought by the statute, but likewise the ends of justice, it is clearly the duty of the court to give the provision a liberal construction.

228 F.—38

The withdrawal of the claim filed by Kinney operated as a refusal or failure to prove the claim in so far as the rights of the surety are concerned. When Kinney withdrew his claim and signed a waiver of participation in dividends, he thereby put the surety on notice that he would look to the surety for the discharge of his debt in full, and that the surety must protect any rights it might have in the bankruptcy court. In legal effect the withdrawal of the claim must be construed as a refusal to prove. It might be that the objection urged by the trustee is met by the fact that Kinney filed a proof of claim at the same time the bond company offered its proof. However, it is difficult to determine how Kinney at that time could have a claim allowed, when he had expressly waived in so far as he personally was concerned any rights to further appear in the bankruptcy proceeding.

[4] Counsel for the trustee attacked the form of the proof offered by the bond company, and insists that it has not complied strictly with the provision of General Order 21, § 3 (89 Fed. ix, 32 C. C. A. ix). An examination of the proof of claim offered by the bond company, which is in the form of a petition for the establishment of its subrogated rights, discloses the fact that it very elaborately sets forth a history of the entire transaction, and measures substantially to the requirements of the bankruptcy statute.

The contention of the trustee that the claim is excessive, in that items therein contained are for counsel fees and costs of court, which have accrued subsequent to adjudication, was sustained in the decree of the referee, and the claim was reduced by striking out such charges.

For the information of the District Judge, all papers, petitions, proofs of claim, and pleadings pertinent to this issue are transmitted as a part of the record of this review.

R. Du Pont Thompson, of Birmingham, Ala., and John D. Bibb, of Anniston, Ala., for appellant.

Phares Coleman, of Birmingham, Ala., for appellees.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

PER CURIAM. We find none of the assignments of error in this case well taken. For reasons sufficiently stated in the report of the referee, the appellee was entitled to the relief granted by the decree entered October 10, 1914, and the same is affirmed.