TUCKER v. DR. P. PHILLIPS CO.,
Inc., et al.

No. 11170.

Circuit Court of Appeals, Fifth Circuit.

April 24, 1945.

A. R. Johnson and Newman T. Miller, both of West Palm Beach, Fla., for appellant.

O. B. Simmons, Jr., of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Alleging that certain moneys belonging to the bankrupt, Southern Roadside Restaurants, Inc., had been wrongfully appropriated by appellees, the trustee in bankruptcy brought this suit for an accounting. From an adverse judgment the trustee appealed, and this court reversed the judgment and remanded the cause for further proceedings. Tucker v. Dr. P. Phillips Co., 5 Cir., 139 F.2d 601. From an adverse judgment on remand, the trustee has again brought the case here for review.

The facts are: On October 31, 1940, Locar, Inc., entered into a written contract of lease with Howard Johnson, Inc., of certain lots in Orange County, Florida, and agreed to erect thereon improvements for use as a restaurant. The lease was for a term of ten years and provided for a monthly rental of $400 per month, the term of the lease and the monthly rental to begin upon delivery of the leased premises. The lease also granted to lessee an option to lease other lots in Orange County, Florida. On November 29, 1940, the parties entered into a supplemental lease whereby the said Locar, Inc., leased unto Howard Johnson, Inc., the lots described in the option upon the same terms, stipulations, and conditions set forth in the original lease between the parties, and for a monthly rental of $100 per month, due and payable as provided in the original lease. On the same date that the original lease was executed, Howard Johnson, Inc., subleased to the bankrupt, the said sublease providing that there was "sublet to the lessee all the premises and buildings leased, or which may hereafter be leased, to it [Howard Johnson, Inc.,] by Locar, Inc., under and subject to the same terms and conditions as stated in said lease," the sublessee agreeing "to fulfill all conditions and other obligations assumed and undertaken by said Howard Johnson, Inc., under its lease." One of the conditions required of Howard Johnson, Inc., by Locar, Inc., was that it deposit the sum of $10,000 in escrow to secure performance by it of its obligations under the lease.[1] The bankrupt, to fulfill all conditions and obligations assumed and undertaken by said Howard Johnson, Inc., under its lease, deposited a cashier's check for $10,000 with Dr. P. Phillips Co., Inc., escrow agent. The restaurant on the leased premises was completed on January 15, 1941, and the bankrupt took possession. The monthly rents due under the contracts, totaling $500, were paid monthly in advance by the bankrupt to Dr. P. Phillips Investment Co., Inc. (assignee of Locar, Inc.), beginning with January 15, 1941, to and including December 15, 1941. Dr. P. Phillips Investment Co., Inc., credited said payments on the rent account of Howard Johnson, Inc., and Howard Johnson, Inc., made the same credits on the rent account of the bankrupt.

The business of the Southern Roadside Restaurants, Inc., did not prosper and on March 23, 1942, an involuntary petition in bankruptcy was filed against it. At that

[1] One of these was the obligation to pay the rent with respect to which the lease contained a provision giving the lessor the option, upon continued default in payment of the rent for the period of 20 days, to terminate the lease and make immediately payable all rentals for the unexpired term.

time the monthly rentals due in advance on January 15, 1942, on February 15, 1942, and on March 15, 1942, were in arrears. Some several days later the escrow agent deposited the cashier's check for $10,000 for collection. On or about April 1, 1942, the escrow agent delivered the proceeds to Dr. P. Phillips Investment Co., Inc., and, upon receipt of said amount, Dr. P. Phillips Investment Co., Inc., credited Howard Johnson, Inc., under the lease, with the three monthly rentals past due and with future monthly rentals to and including September 15, 1943, and Howard Johnson, Inc., made the same credit to the bankrupt under the sublease.

In our former opinion, we said [139 F. 2d 603]: "We have noted that the money deposited with the escrow agreement was not deposited to secure the obligations of the bankrupt as sublessee, but of Howard Johnson, Inc., as lessee; and it does not appear how much was due by Howard Johnson, Inc., under the lease. The money, when deposited in escrow, belonged to the Southern Roadside Restaurants, Inc. After it was so deposited it continued to be the property of that corporation, subject to the lien of the escrow agreement, until its adjudication in bankruptcy, whereupon the title thereto passed to the trustee in bankruptcy subject only to said lien. It now appears that the escrow agent has paid over all of the money to an affiliated company. This payment may have been justified, but there was no proof of it, though proof, if it existed, was peculiarly within the knowledge of the escrow agent. The trustee in bankruptcy made out a prima facie case; he was not required to negative facts peculiarly within the knowledge of defendants."

On remand, the trustee, appellant here, amended his bill of complaint, alleging that Howard Johnson, Inc., had received the benefit of the $10,000 placed by the bankrupt in escrow and was liable to him for said sum, as it had been used to pay the rent due by Howard Johnson, Inc., under its lease; and the trustee prayed for judgment against Howard Johnson, Inc., for said amount.

■ Much evidence was introduced by appellees on retrial to show that the $10,-000 in escrow had been applied to payment of rent past due and to become due by Howard Johnson, Inc., under the original leases, and by the bankrupt to Howard Johnson, Inc., under its sublease, pursuant to an oral agreement entered into in February of 1942. The court below, while holding same immaterial found that such an agreement was entered into between the appellees and the bankrupt. This finding on the part of the trial judge, however, is not supported by substantial evidence.

The evidence shows that Tracy Ryan, an officer of Howard Johnson, Inc., and of the bankrupt, met an agent representing the escrow agent and Dr. P. Phillips Investment Co., Inc., during February of 1942, and that a discussion was had looking to the application of the $10,000 deposited in escrow to the payment of past-due rent and rent to become due in the future. Immediately following the discussion a written agreement was prepared setting forth that the $10,000 should be so used, which was mailed to the parties for their signature but was never signed. There was evidence that Ryan, the treasurer of the bankrupt and of Howard Johnson, Inc., orally agreed to such use and that the agreement to be executed by the parties was intended merely as a memorandum of the oral agreement. Whether or not Ryan so agreed is immaterial, because the record makes it plain that he acted without authorization by the board of directors of the bankrupt or by the board of directors of Howard Johnson, Inc., and there is no showing that said boards of directors ever ratified such an agreement. On the former appeal to this court, we found that the money of the bankrupt was deposited in escrow to guarantee the performance by Howard Johnson, Inc., under its lease, of its obligations to its lessor. We held that the $10,000 was subject to the lien of the escrow agreement; that, upon default of the payment of the monthly rent due under the lease agreements, lessor was entitled to have said sum applied to the payment of the rent due by Howard Johnson, Inc.; and that this right was not affected by the bankruptcy of Southern Roadside Restaurants, Inc., the sublessee of Howard Johnson, Inc.

■ When this case was retried in May of 1944, the evidence showed that neither the bankrupt nor Howard Johnson, Inc., paid to Phillips Investment Co., Inc., assignee of Locar, Inc., the monthly rentals payable in advance on January 15, 1942, through September 15, 1943. Under such fact, the Phillips Investment Co., Inc., lessor, had a perfect right to apply the $10,000 to the payment of these monthly rentals. It seems clear, therefore, that

there was, in principle, no violation of the escrow agreement in making such application; hence, we hold, as did the court below, that no obligation for refund rests upon Dr. P. Phillips Co., Inc., escrow agent, or upon Dr. P. Phillips Investment Co., Inc., assignee of the original lessor.

The remaining questions in the case involve the claim asserted against Howard Johnson, Inc., to recover moneys of the bankrupt used to pay obligations of the sublessor, and the counterclaims interposed by Howard Johnson, Inc., for (1) goods sold and delivered to the bankrupt between January 15, 1941, and March 23, 1943, in the sum of $9,118.44, and (2) damages sustained by virtue of the anticipatory breach of the sublease, in the sum of $10,000.

 As has been noted, the only funds placed in escrow were those pledged to secure performance of the obligations of Howard Johnson, Inc., to its lessor; there was no similar pledge to secure performance of the covenants of the bankrupt. The respective rights of the parties to the sublease, therefore, are only those arising under the sublease or conferred by law, and the considerations decisive of the issue between the bankrupt and the escrow agent are not applicable. For this reason the court below erred in holding that the escrow deposit was charged with a lien to secure performance by the bankrupt of its contractual obligations to its sublessor.

Under the provisions of the sublease, the sublessor was given the right to accelerate the maturity of all rentals for the unexpired term of the lease if the sublessee (1) should be adjudicated a bankrupt, (2) should have execution levied against it, or (3) should continue in default in the payment of rentals for a period of 20 days after notice given by registered mail. If the sublessor had exercised its option to accelerate the maturity of all rentals prior to the filing of the petition in bankruptcy, it may be that it would thus have acquired greater rights;[2] but on that date the option had not been exercised. The only rentals recognized in bankruptcy as then owing were those then due and unpaid.[3] The filing of the petition in bankruptcy did not of itself put an end to the sublease, but the sublessor had the contractual right, upon adjudication, to ter-

minate it. It obviously elected to exercise this option, for in its counterclaim it seeks damages for the anticipatory breach thereof. Necessarily, when the sublease was terminated, rents ceased to accrue thereunder. The sublessor could not collect rentals and at the same time recover damages for the nonpayment of the rent.[4]

 We therefore hold that the bankrupt is indebted to Howard Johnson, Inc., for all monthly rentals accruing and unpaid prior to the date of the adjudication in bankruptcy, and that Howard Johnson, Inc., is indebted to the bankrupt for all funds of the bankrupt used to pay the obligations of Howard Johnson, Inc. Since the court below did not consider the merits of the counterclaims or any questions of set-off that may arise in connection therewith, the ultimate rights and liabilities of the sublessor and the trustee of the bankrupt may not be determined on this appeal. These are matters upon which the trial court must first rule.

The judgment appealed from is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

---

2 Cf. In re Pittsburgh Drug Co., D.C., 164 F. 482.

3 In re Roth & Appel, 2 Cir., 181 F. 667, 31 L.R.A.,N.S., 270; 11 U.S.C.A. § 103, sub. a.

4 Lamson Consolidated Store Service v. Bowland, 6 Cir., 114 F. 639.