HOWARD JOHNSON, Inc., OF FLORIDA
v. TUCKER.

No. 11652.

Circuit Court of Appeals, Fifth Circuit.

Nov. 18, 1946.

W. O. Mehrtens, of Miami, Fla., for Howard Johnson, Inc., of Florida.

A. R. Johnson and Newman T. Miller, both of West Palm Beach, Fla., for S. J. Tucker.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

This is the same case that was before this court in Tucker v. Dr. P. Phillips Co., Inc., et al., 5 Cir., 139 F.2d 601, and Tucker v. Dr. P. Phillips Co., Inc., et al., 5 Cir., 148 F.2d 904. The crux of the controversy has shifted as the litigation has developed, but the petition retains its original prayer "that an accounting may be had as between your plaintiff and the defendants; that judgment be entered against the defendants or such one or more of said defendants as may be liable to plaintiff for the wrongful appropriation of said cashier's check and proceeds therefrom; together with such other judgments and orders as may be necessary and proper to grant full and complete relief herein." The plaintiff is the trustee in bankruptcy of Southern Roadsides Restaurants, Inc., appointed on an involuntary bankruptcy petition filed March 23, 1942. The cashier's check is one deposited by the bankrupt in escrow Oct. 31, 1940, to secure performance by Howard Johnson, Inc., of a lease dated that day from Locar, Inc., to Howard Johnson, Inc., of premises which at the same time Howard Johnson, Inc., was subleasing to the bankrupt at the same rental of $500 per month.* The cashier's check for $10,000 was required to be deposited with an escrow agent before Locar, Inc., would agree to make extensive improvements and sign its lease, and the bankrupt, who was to occupy and use the premises, put up the check. The rent was paid each month by bankrupt to Locar, Inc., or its assignee, until Jan. 15, 1942. On April 1, 1942, on demand of the assignee of Locar, Inc. (Dr. Phillips Co. Inc.), the escrow holder cashed the check for $10,000 and applied $1,500 of it to the payment to the assignee of three months rent past due, and $8,500 to rent to become due by Howard Johnson, Inc., accelerated by a provision of the main lease. These facts are all now conceded.

On the first trial the plaintiff's evidence alone was heard. The district judge thought it did not show a misappropriation of the check or its proceeds by the defendants Dr. Phillips Co., Inc. and the escrow agent, and that it was unnecessary to go further, and he directed a verdict for defendants, including Howard Johnson, Inc. This court reversed, thinking a prima facie case had been made against the escrow agent and the recipient of the money, and that they should more clearly show that all the money was rightly applied. 5 Cir., 139 F.2d 601.

The plaintiff then amended his petition and alleged that the bankrupt's check was a security under the escrow agreement for the rent obligations of Howard Johnson, Inc., and was used to pay them, so that Howard Johnson, Inc., got the benefit of and was liable to the bankrupt estate for the $10,000. Howard Johnson, Inc., had already pleaded as a counterclaim that the bankrupt at bankruptcy was indebted to it (as the schedule in bankruptcy admits) for goods sold and delivered in a sum of $9,118.44, and that it had in consequence of its adjudication broken the sublease to the damage of Howard Johnson, Inc., in the amount of $10,000. Judgment was prayed for these amounts. The district judge on a full hearing found that the whole $10,000 arising from the check was applied properly to the purposes for which the check was put in escrow, and again gave judgment in favor of all the defendants, making no accounting as between plaintiff and Howard Johnson, Inc. On appeal this court held that no misapplication of the escrowed fund had been made, so that neither the escrow agent nor the assignee of the main lessor was liable for anything, but that the case still was not completely tried as to Howard Johnson, Inc., using these words: "We therefore hold that the bankrupt is indebted to Howard Johnson, Inc., for all monthly rentals accruing and unpaid prior to the date of the adjudication in bankruptcy, and that Howard Johnson, Inc., is indebted to the bankrupt for all funds of the bankrupt used to pay the obligations of Howard Johnson, Inc. Since the court below did not consider the merits of the counterclaims or any questions of set-off that may arise in connec-

---

* There were two leases to Johnson, Inc., of adjoining properties, but this fact cuts no figure in the question for decision.

tion therewith, the ultimate rights and liabilities of the sublessor (Howard Johnson, Inc.) and the trustee of the bankrupt may not be determined on this appeal. These are matters upon which the trial court must first rule." The cause was remanded to this end. 5 Cir., 148 F.2d 904, 907.

The case was retried on the former record alone, with an agreement that the counterclaim for goods sold before bankruptcy is correct as to amount. The judge held that the counterclaims were not good setoffs, except for the rent accruing before bankruptcy, $1,500, and he gave judgment to the trustee in bankruptcy against Howard Johnson, Inc., for the difference, $8,500, with interest. No finding was made as to the amount of damages due Howard Johnson, Inc., for breach of the lease. Each appeals from the part of the judgment adverse to him.

We do not think this is the accounting and the full and complete relief for which the petition prays. It omits the lease damage claim of Howard Johnson, Inc., which arises out of the same contracts and business as does the claim of plaintiff. The check escrow was not an isolated contract. It alone was looked to in ascertaining the non-liability of the escrow agent and Locar, Inc., and its assignee, who were found to have done and received under it only what was right. But it is otherwise as to Howard Johnson, Inc., for the evidence is uncontradicted that Locar, Inc., refused to make the extensive improvements contemplated, or to execute its lease to Howard Johnson, Inc., unless a deposit of $10,000 to secure the rents was made. The sublease by Howard Johnson, Inc., to bankrupt referred to the Locar lease, adopted its terms and conditions, and bound the sublessee to pay the same rent "and also to fulfill all conditions and other obligations assumed and undertaken by said Howard Johnson, Inc., under said lease." It was the bankrupt who was to occupy and who was urgent for speed, insisting that work be begun at once before the plans and specifications for the improvements were approved, and who put up the check in escrow to induce immediate execution by Locar, Inc., of its lease and the beginning of the work without further delay. Both leases and the escrow agreement were dated the same day. As between the bankrupt and Howard Johnson, Inc., they are one piece of business. The bankrupt was under inchoate obligation to pay rent as it accrued, and did pay it by arrangement with Howard Johnson, Inc., directly to the assignee of Locar, Inc. Howard Johnson, Inc., was under inchoate obligation to reimburse bankrupt should the escrow check be used. It was the bankrupt's failure to pay its rent that caused the use of the check. It would be unjust and inequitable to separate these mutual inchoate obligations in an accounting between these parties. This is true not only as to rents accrued at bankruptcy, but also as to the damages which the Bankruptcy Act substitutes for future rents on rejection of the lease by the trustee in bankruptcy. The petition here asserts that this lease was promptly disclaimed by the trustee on May 2, 1942, a month after the escrow check was used. The claim for damages thus arising is as proper a counterclaim in the settling of this business as the rents accrued, and they ought to be ascertained in the accounting. The amount of damages for the rejection of the lease by the trustee ought to be limited as it is in the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a (7). But when the damage is ascertained, because the obligation breached arises out of the same transaction as that on which the trustee is suing, it is not a separate unsecured claim against the estate, but a recoupment which may be defensively asserted in this plenary suit by the trustee. "Recoupment is the act of rebating or recouping a part of a claim upon which one is sued by means of a legal or equitable right resulting from a counterclaim arising out of the same transaction." 57 C.J., Setoff and Recoupment, § 1. It differs from a setoff, in that "A setoff is a counter demand which a defendant holds against a plaintiff arising out of a transaction extrinsic of plaintiff's cause of action." Id. § 2. Setoff is of statutory origin and depends for application generally on statutory provisions. Id. § 3 and ff. Recoupment exists at common law and in equity and rests on the justice of settling both

sides of a transaction at once as a mutual matter. The arrangements for the leasing by the bankrupt of this property should be regarded as one transaction thus to be settled as between it and Howard Johnson, Inc.

The counterclaim for goods sold and delivered by Howard Johnson, Inc., to the bankrupt does not appear to be a part of the lease transaction, and is a true setoff to be regulated by the Bankruptcy Act on the subject, 11 U.S.C.A. § 108. Its amount is admitted. We see no reason why it should not be available as a setoff to any balance that Howard Johnson, Inc., may be found owing the bankrupt on the lease transaction, unless it be because at bankruptcy the latter claim was inchoate, the escrow check not having then been used. But nothing tortious was done with the check or its proceeds which would give the trustee a wholly new cause of action. Whether this immaturity of the claim prevents a setoff, and requires that Howard Johnson, Inc., should pay what it owes, if anything, and should prove its account for goods in the bankruptcy proceeding and receive only dividends on it, is not precisely determined by any authority to which we have been referred. We regard one who pledges specific property to secure the obligation of another as being pro tanto a surety for that obligation, and that they sustain the relation to each other of principal and surety. Cross v. Allen, 141 U.S. 528, 534, 12 S.Ct. 67, 35 L.Ed. 843; Fowler v. Barlow, 102 Vt. 99, 146 A. 77. The general proposition seems well settled that the implied obligation to indemnify the surety arises as an implied contract when the suretyship relation is created, but matures only when he has been injured by being compelled to make payment of the debt. 4 Williston on Contracts, Rev.Ed., Sec. 1274. And the relation between them of debtor and creditor has been often asserted to exist from the time the suretyship was undertaken. 50 C.J., Prin. and Surety, § 394; Fidelity & Deposit Co. of Maryland v. Hobbs, 10 Cir., 144 F.2d 5. In applying these principles to bankruptcies and the liquidation of banks, and to setoffs therein, the claim of the surety has been frequently recognized as existing at the date of bankruptcy or liquidation proceedings begun, though the surety did not perfect and make certain his loss by payment until after that date. Kilpatrick v. United States Fidelity & Guaranty Co., 5 Cir., 228 F. 587; Scott v. Norton Hardware Co., 4 Cir., 54 F.2d 1047; United States Fidelity & Guaranty Co. v. Centropolis Bank, 8 Cir., 17 F.2d 913, 53 A.L.R. 295; Dickenson v. Charles, 173 Va. 393, 4 S.E.2d 351. But in each case it was the principal and not the surety who was insolvent, while the reverse is true here. But we can see no difference. The question is the same, that is, whether the surety can be said to have had a debt at the time of proceedings begun when he could not then have sued because he had suffered no loss on his outstanding suretyship. The authorities compel the conclusion that when the loss is finally established a claim may be made as of the date of the suretyship. This trustee in bankruptcy who could own nothing but what the bankrupt owned at the time of the adjudication, is asserting this contractual claim as a thing then owned by the bankrupt. He took it subject to all defenses which were good against the bankrupt, including this setoff.

■ Since the claims for goods sold and the $1,500 rent accrued before bankruptcy amount to more than the claim of the trustee for $10,000, it is evident he can have no recovery irrespective of the counterclaim for damages. But it will be necessary to fix the damages to determine what residue of the claim for goods sold may be proved against the bankruptcy estate. We do not think the evidence ought to stand closed on the issue of damages, for when the first and only witness was questioned about that the evidence was objected to and the court reserved its ruling. No ruling was ever made, nor did the court make any finding on the issue. Both parties should be allowed to introduce further evidence about it.

The judgment appealed from, as to the trustee's appeal, is affirmed. As to the appeal of Howard Johnson, Inc., it is reversed and the cause is remanded for further proceedings in accordance with this opinion.